Burke, J.
On February 16, 1953 Humphrey Statter commenced an action for separation against his wife, Amy Statter, charging cruelty and abandonment. An extension of time to answer was granted the wife on her attorney’s representation that further time was required to establish the existence of a prior marriage by the husband, the fact of which would serve as a defense and basis for affirmative relief in the separation action. Despite this extension, however, when the answer was filed it. contained neither affirmative defense nor counterclaim. Instead, the wife’s pleading admitted the marriage’s validity and denied the allegations as to cruelty and abandonment. After a trial of the issues, both parties having appeared, the cause of action alleging cruelty was dismissed on consent but the cause based on abandonment was sustained and a judgment in favor of the husband entered. The court’s decision contained a finding that the husband and wife were validly married.
More than two years later the wife initiated the present suit. Her complaint alleges two causes of action: the first based upon *671 the existence of a valid, undissolved marriage between the husband and one Kate Oglesby that rendered the husband’s purported marriage to the complainant void; the second claiming that the wife’s consent was fraudulently procured by the husband who falsely represented to her that he had not previously been married.
The husband has moved under subdivision 4 of rule 107 of the Rules of Civil Practice to dismiss the complaint on the ground that the existing final judgment of separation is determinative as to any issue of the marriage’s validity. The wife’s principal argument is to the effect that the causes of action for annulment and separation are “ different ” and that, therefore, only issues actually contested, i.e., issues controverted by the pleadings, are barred in the second action. She concludes that since the marriage’s validity was never actually litigated in that sense, the court’s determination on the question is not preclusive. In explanation of her failure to raise the questions now presented during the earlier action, the wife alleges that although she was then in possession of a Mexican divorce decree which purported to dissolve a marriage between a Humphrey Statter and one Kate Oglesby, and a Massachusetts birth certificate for a child born to “ Kate Oglesby Statter of New York and Humphrey Statter, a lawyer, born in Iowa ”, she was then unable to establish that the Humphrey Statter who married Kate Oglesby was the same Humphrey Statter (also a lawyer) who was plaintiff in the separation action. She assigns as at least a contributing cause for her failure to raise the questions in the earlier action the fact that her husband, when confronted with the evidence of the marriage, denied that he had been married to the woman mentioned in the birth certificate or that he was the father of the child. According to the wife, she has since that time acquired additional evidence sufficient to make out the causes of action she now pleads.
The question on this appeal is whether the prior separation judgment should be deemed res judicata on the question of the marriage’s validity, thereby precluding a reopening of that issue in this subsequent and separate proceeding.
Although there is probably no area of our law less susceptible of rigid formulation and definition than that of res judicata, some criteria have been traditionally and consistently employed. Such is the nature of the statement of the rule as it appears in *672 the oft-cited case of Pray v. Hegeman (98 N. Y. 351, 358). It was there said that the estoppel of a former judgment extends to all matters “ comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered [citations omitted]. It is not necessary to the conclusiveness of a former judgment that issue should have been taken on the precise point controverted in the second action. Whatever is necessarily implied in the former decision, is for the purpose of the estoppel deemed to have been actually decided ”. Another statement of the rule, in substantially similar terms, was cited and relied upon by us in the case of Ripley v. Storer (309 N. Y. 506, 517, citing 50 C. J. S., Judgments, § 712, p. 173). This principle points the way in the present case.
Guided by the rule in the Pray case {supra), our inquiry here is directed not to the forms of the two actions (50 O. J. S., Judgments, supra) but rather toward a determination as to whether the questions presented by the suit before us were necessarily involved in and determined by the first judgment. Examination reveals that they were. The subject of the present suit is, of course, the validity or invalidity of the marriage. By virtue of section 1161 of the Civil Practice Act, the first action for separation could be maintained only “ by a husband or wife against the other party to the marriage ”. It is clear beyond dispute that this section makes the existence of a valid marriage a condition precedent to the successful maintenance of a cause for separation (Fischer v. Fischer, 254 N. Y. 463, 466), and that a judgment of separation establishes the existence of a valid and subsisting marriage between the parties (Cherubino v. Cherubino, 284 App. Div. 731). We said as much, though in a different context, when we decided the case of Garvin v. Garvin (306 N. Y. 118). In the words of the Pray case the validity of the marriage was ‘ ‘ comprehended and involved in the thing * * * decided it was “ necessarily implied in the former decision ” (Pray v. Hegeman, supra). It follows that res judicata bars a second trial on the issue of the marriage’s validity. As already indicated, this is true despite the fact that no clash or controversy surrounded the issue and that it was found on the basis of an admission in the pleading. (See Pray v. Hegeman, supra; Warshor v. Warshor, 130 Misc. 262, 230 App. Div. 770; Frost v. Frost, 260 App. Div. 694; Gates *673 v. Preston, 41 N. Y. 113, 116; Davis v. Tallcot, 12 N. Y. 184, 189-190.) The essence of res judicata is the fact that a court has already been presented with the subject sought to be litigated and has rendered a judicial determination thereon. The question of what evidence has been actually produced is immaterial. It may be that in seeking to ascertain whether the two issues are the same a comparison of the evidence needed to establish the respective questions may be an appropriate criterion. But assuming the issues in the two cases to be the same, whether or not it has been determined in no wise depends upon whether it has been the subject of stubborn contention or has been found by way of concession (2 Freeman on Judgments [5th ed.], § 660, pp. 1390-1391; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 691-692). In either case the public policy which underlies the doctrine of res judicata is applicable.
The famous statement of then Chief Judge Cardozo in Schuylkill Fuel Corp. v. Nieberg Realty Corp. (250 N. Y. 304) leads us to the same conclusion. It was there indicated, as it had been in the Pray case {supra), that further judicial consideration in a second action should be denied if the subject of the second suit is so inextricably involved with that of the first that it must have entered into the composition of the first judgment. Chief Judge Cardozo said: “ A judgment in one action is conclusive in a later one not only as to matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first” (250 N. Y. 304, 306-307). Since the primary fact to be established in the separation action was the existence of a valid marriage, it cannot be gainsaid that a decision in the pending annulment action declaring the marriage invalid would undermine and devitalize completely the earlier separation judgment by depriving it of the very basis upon which it was rendered. The inconsistent determination would result in the alteration or dissolution of the status and concomitant rights and interests already declared to exist. To avoid this threatened impairment and inconsistency the law imposes the bar of res judicata (Warshor v. Warshor, supra; Durham v. Durham, 99 App. Div. 450; Frost v. Frost, supra; Woodland v. Woodland, [1928] Prob. 169).
*674 We see no real conflict between the rule of “ collateral estoppel by judgment ” urged by the wife and adopted by the court below, and the conclusion here reached. That principle revolves about a determination of which causes of action are the “same” and which are “different” (see Cromwell v. County of Sac, 94 U. S. 351, 352-353). But causes of action in this setting are not different by virtue merely of their form or the relief sought. If we apply the standard propounded in the Schuylkill case (supra), causes of action are the same when the second judgment could result in an impairment of the one obtained in the first suit. It follows, however, that if the question or questions in the second action were material and necessarily involved in the first determination the threat of impairment must be present. As has already been pointed out a judgment of nullity could not now be granted without thereby undermining the judgment of separation which rests upon the fact of marriage. Since this is so, even if we were to insist upon the statement of the rule as it appears in the opinion of the Appellate Division, we would have to hold that the causes of action are the same for the purposes of the rule and that accordingly relevant matters not raised in the separation action on the question of the marriage’s validity are now precluded.
Concluding as we have that the question of the marriage’s validity was determined by the earlier separation judgment, attempted avoidance of that judgment in this action constitutes a collateral attack (Restatement, Judgments, § 11, comment a, p. 65). As such, the wife’s argument that the husband’s concealment of his prior marriage constituted fraud would not be a sufficient basis upon which to deprive the earlier judgment of its conclusive effect. (See Crouse v. McVickar, 207 N. Y. 213, 217-218; Arcuri v. Arcuri, 265 N. Y. 358.)
The claim of “ newly discovered evidence ” is equally inappropriate. It is commonly held that the mere discovery of fresh evidence is no answer to the defense of res judicata when raised in a subsequent, separate cause of action (see 149 A. L. R. 1195 n).
A number of factors militate in favor of the principle, demonstrated by these cases, that a valid judgment should not be subject to a collateral attack, i.e., in other ways than by proceeding against the original judgment directly. Perhaps the most relevant factor here is the law’s desire to secure stability *675 and consistency of judicial determinations. To this end, in order to obviate the possibility that a second court in a separate action shall reach a decision contrary to one already achieved, the law requires, with few exceptions, that objections other than jurisdictional be raised in the same proceeding or in a separate proceeding to dissolve the first judgment. Thus if the court has been mistaken in the law there is a remedy by way of appeal. If the court or jury has been mistaken in the facts the remedy is by a motion for a new trial. If there has been evidence discovered since the trial the law makes appropriate provision by way of motion in the first proceeding. By relegating questions such as the one here, where possible, to remedies in the original proceeding the law secures the integrity of determinations and at the same time provides that justice may be accomplished in the individual case. The method is a well-established one (see generally United States v. Throckmorton, 98 U. S. 61, 65; 149 A. L. R. 1195 n), the operation and effect of which is exampled by the circumstances of this case. If we refuse to apply the doctrine of res judicata or permit collateral attack of the separation judgment on the grounds urged and the annulment action is subsequently prosecuted to judgment for the wife, a situation would be created whereby a judgment of separation would be extant simultaneously with a judgment of annulment between the same parties. Further confusion might thereby be engendered in already complex areas of law. On the other hand our law supplies a procedure by virtue of which any injustice claimed by the wife in this case might have been alleviated without the undesirable result of separate and inconsistent judicial determinations. Under section 552 of the Civil Practice Act if a party has acquired material evidence since the time of trial, which evidence was not earlier uncovered despite the exercise of due diligence, a motion can be made for a new trial on that basis. There appears to be no reason why the wife thereby could not have obtained a full measure of relief if, as she maintains, the only reason she did not make a defense in the earlier action was because the necessary evidence was, at the time, unavailable to her.
In any event, our law closes the door to attack upon the judgment already obtained by the method the wife has chosen to employ.
*676 There remains one further and final consideration. The wife urges that since the claim here made, if established, would render the marriage void ab initio the doctrine of res judicata is not applicable. In effect she would have us engraft upon the doctrine an absolute exception in favor of actions such as the one before us. Neither of the courts below has suggested such a total immunity and it appears to be unwarranted by either principle or precedent. The considerations that underlie and inspire the doctrine and particularly those mentioned here, are relevant to actions for a decree of nullity as to any area of law. As stated in one notable text ‘ ‘ There is no logical or legal basis, either on grounds of public policy or otherwise, for the claim that the nature of the matter determined may be such that a judgment adjudicating it will not be treated as conclusive though contrary to the law and the facts.” (2 Freeman on Judgments [5th ed.], § 628, p. 1325; see, also, Warshor v. Warshor, supra; Frost v. Frost, supra, p. 697; Woodland v. Woodland, supra.)
The order of the Appellate Division should be reversed and the complaint dismissed; the question certified answered in the negative.